# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LUISA C. WILDEY,<br><br>　　　　　　　　　　Plaintiff,<br>vs.<br>STATE OF CALIFORNIA; et al.,<br>　　　　　　　　　　Defendants. | CASE NO. 07cv1154 JM(JMA)<br><br>ORDER GRANTING MOTIONS FOR SUMMARY JUDGMENT |

The motion of Defendant Sharp Memorial Hospital ("Sharp"), although styled as a motion to dismiss the Third Amended Complaint ("TAC") for failure to state claim, (Docket No. 54), is treated as a motion for summary judgment pursuant to the court's October 20, 2009 order converting the motions to dismiss to ones for summary judgment pursuant to Fed.R.Civ.P. 12(d). Defendants Department of Industrial Relations ("DIR") and the Department of Rehabilitation ("DOR") move to dismiss the complaint or alternatively for summary judgment. (Docket Nos. 56, 67) Plaintiff, proceeding in propria persona, opposes all motions. Pursuant to Local Rule 7.1(d)(1), the matters presented are appropriate for decision without oral argument. For the reasons set forth below, the court grants Sharp's converted motion for summary judgment and grants DIR and DOR's motion for summary judgment.

## BACKGROUND

Introduction

On June 16, 2009, Plaintiff Luisa Wildey, proceeding pro se, filed the operative TAC broadly

alleging claims against Defendants for disability discrimination in violation of the Rehabilitation Act of 1973 and the Americans with Disabilities Act ("ADA"), violation of the Civil Rights Act, 42 U.S.C. §1983, and a claim for constructive fraud. Defendants are the Rehabilitation Appeals Board, Health and Human Services Agency, Department of Rehabilitation, Client Assistance Program, the Dayle McIntosh Center for Disabled, Access for Independence, Workers Compensation Appeals Board, Bureau of Rehabilitation, and Sharp Memorial Hospital. In addition to the defendants identified in the caption, Plaintiff also purports to identify about fifteen individual defendants in the body of the complaint but has failed to identify those individuals in the caption as required by Fed.R.Civ.P. 10(a).

The State of California, on behalf of all named government defendants, moves to dismiss Plaintiff's TAC pursuant to Federal Rule of Civil Procedure Rule 8(a)(2) for failure to set forth a short and plain statement of the claim and for summary judgment pursuant to Federal Rule of Civil Procedure 56. Defendant State of California also moves to dismiss the constructive fraud and discrimination claims against the DOR and DIR as barred by judicial immunity, discretionary immunity, and failure to comply with the Tort Claims Act.

Background

Wildey is a qualified disabled individual. In 1992, Wildey suffered a job related spinal cord injury leading to debilitating pain and other related medical problems. (TAC Exh. 1, Social Security Disability Decision). Plaintiff receives disability benefits pursuant to 9 U.S.C. 7051(c).

On February 4, 2004, Wildey applied for vocational rehabilitation services with the DOR. (TAC Exh. 5, Rehabilitation Appeals Board Decision). Wildey indicated she suffered from several medical problems, including two brain tumors, a seizure disorder, and insulin dependant diabetes. At the time, the DOR asked Wildey to attend a medical evaluation to assess her ability to work. (TAC at p.23). The DOR referred Wildey to Sharp's Work Re-Entry Program for a three-day vocational assessment. (TAC at p.23, ¶54.) Because Wildey felt that a consecutive three day assessment would be too burdensome on account of her severe neurological pain disorders, Sharp agreed to modify the testing schedule to meet her disability needs. The three day testing schedule was changed to every other day, rather then three consecutive days. (TAC Exhibit 5 at p.3). Wildey attended the first two days of the evaluation, but was unable to attend the final day on the advice of her doctor. (TAC at p.

1  25, ¶55.)  Sharp prepared an evaluation ("Sharp Report") noting Wildey's inability to complete the
2  assessment because of complaints of pain and indicating her unsuitability for any vocation other then
3  specialized home-based work.

4        On February 15, 2005, Wildey met with the DOR and proposed starting an alpaca farming
5  business.  (TAC Exh. 5 at p. 3).  DOR informed Wildey of its requirement that she have at least one-
6  year of paid work experience in the field before she could start such a business.  Id.  Rehabilitation
7  Counselor Johnson informed Wildey that she did not qualify for assistance from DOR because she did
8  not have formal training or education and did not have the one year experience as required by
9  California Code of Regulations §7136.5(b). Wildey questioned the validity of this policy and pursued
10 her claim further with the DOR.  Id.

11       On February 15, 2005 Plaintiff met with Rehabilitation Supervisor Sally Garrett.  Wildey
12 continued to argue in favor of the alpaca breeding business proposal, arguing that she would apply her
13 office work experience and hire employees to raise the alpaca. (Garret Decl. ¶8).  In April, 2005
14 Wildey submitted her alpaca business plan. On April 22, 2005 Garret again informed Wildey that the
15 DOR would not recommend the alpaca business plan for approval because she lacked the required
16 work experience and education as required by the regulations. (Garrett Decl. ¶10). Wildey continued
17 to dispute that education and experience was a prerequisite for DOR's assistance in starting an alpaca
18 breeding business.

19       On May 6, 2005, the DOR, acting though Supervisor Garrett, authorized funding for a small
20 business plan review, and referred Wildey to a business consultant, Oduro Takyi.  (Id. at p. 4).  A
21 Short time later, both Wildey and Takyi contacted Garrett to say that they could not work with each
22 other. (Garrett Decl. ¶12). The DOR informed Wildey that it would not be able to provide her with
23 the funds to purchase the alpacas, but that it could help her fund other such related activities as
24 marketing, advertising, and obtaining a business license.  The DOR maintains that Wildey was
25 uncooperative with the business consultant assigned to assist her, failed to complete the requisite
26 financial forms, and otherwise failed to comply with the DOR's requirements.  (Id. at p. 5).  When
27 DOR offered to send Wildey's business plan to another consultant for review, Wildey objected.  She
28 insisted that the consultant must have agricultural experience and at least three references.  (Garrett

1  Decl. ¶13, 14).

2  Garrett located two consultants for Wildey to talk to, one of whom supplied two references and
3  had experience reviewing agriculture and farming plans. On September 7, 2005 Garrett sent a letter
4  to Wildey providing her with the contact information for the consultants. On September 20, 2005
5  Wildey wrote Garret and informed her that the business consultant did not have the proper
6  qualifications and that the consultants "mutilated" her business plan. (Garrett Decl. ¶15, 16). In this
7  letter, Wildey said that she had decided to pursue the purchase of an Alpha Graphics copy business
8  franchise and would require a grant of about $500,000 to purchase the franchise and for start up costs.
9  (Garrett Decl. ¶16).

10  On October 4, 2005 Garrett informed Wildey that the DOR could not provide her with the
11  funds to purchase an Alpha Graphics franchise because, pursuant to 9 CCR §7137 and 9 CCR §7149,
12  the purchase of a franchise or construction of a new business was outside the scope of rehabilitation
13  services that the DOR provides. (Garrett Decl. ¶17). Wildey responded to this letter requesting "small
14  business forms" from the department, including forms related to established small businesses. (Garrett
15  Decl. ¶18). As these forms did not apply to Wildey's situation because she did not already have an
16  established small business, Garrett believed that Wildey did not understand the instructions that were
17  given to her. Id.

18  On November 14, 2005 Garrett requested that Wildey come in for a face-to-face meeting with
19  her and her supervisor, Charles Compton, to discuss her case. Garrett sent this letter because she felt
20  that Wildey did not seem to understand the DOR's position and she believed that the issues could be
21  better addressed in person. Garrett also wanted her supervisor present because of Wildey's complaints
22  concerning the handling of her case. (Garrett Decl. 19). At the November 22, 2005 meeting, Wildey
23  claimed that DOR had lied to her and was seeking a way not to fund her self-employment plan.
24  (Compton Decl. ¶4). Supervisor Compton explained to Wildey that they no longer had a current plan
25  to evaluate because Wildey had demanded the return of her plan and did not allow DOR to keep a
26  copy of the plan. Id. He again explained that Wildey had to submit a completed business plan and
27  have it reviewed by a consultant before the DOR could make a final decision. Wildey then
28  complained about the referred business consultants, noting that the first consultant was impossible to

1  work with and that the second was a "minority" and believed that he would hire only African
2  Americans. (Compton Decl. ¶5: Garrett Decl. ¶22). Compton informed Wildey that her case would
3  be closed if she refused to cooperate with the DOR and did not submit a business plan for review. Id.
4  Wildey then pulled out the alpaca plan and the franchise plan and asked Compton to choose which
5  plan the DOR would approve. Compton then explained that DOR would not pick and choose between
6  plans but that she would have to decide which one to submit. Wildey then submitted the alpaca
7  breeding plan. (Compton Decl. ¶6; Garrett Decl. ¶23).

8  After the November 22, 2005 meeting, Compton became concerned about Wildey's ability to
9  process verbal information because she had difficulty comprehending the information provided to her
10 in letters and meetings. Wildey repeatedly brought up the same issues and questions despite the fact
11 that DOR had responded to her concerns. (Compton Decl. ¶7-9). Compton believed that her
12 communication and comprehension difficulties would significantly hinder her in running a business
13 and believed that Wildey should undergo further testing regarding her neurological impairments in
14 order to evaluate her qualifications for self-employment. (Compton Decl. 9). Garrett agreed with this
15 decision. (Garrett Decl. ¶24).

16 Compton also reviewed the alpaca business plan and noted that the plan was incomplete. For
17 instance, Wildey had not completed the marketing plan section, indicating that it was "not applicable."
18 He also identified several items where Wildey failed to identify the cost of the items and she did not
19 complete the forecast of annual income and expense for the proposed business. (Compton Decl. 10).
20 Wildey was then informed that additional information was required to assess the business plan.

21 On February 1, 2006 Compton, Garrett, Wildey, and Wildey's daughter met to discuss the
22 alpaca business plan. Compton explained that the business plan contained obvious mistakes and did
23 not accurately indicate forecasted income and expenses. When Compton explained the significance
24 of these problems, Wildey had difficulty understanding these concepts. Wildey requested two months
25 to correct the business plan. (Compton Decl. ¶12; Garrett Decl. ¶25).

26 In April 2006, Garrett contacted Wildey to remind her that two months had passed and that she
27 had not submitted the additional information requested to assess her business plan. Garrett also
28 informed Wildey that based on the lack of progress, her apparent difficulty completing the business

1  plan, and the failure to complete the vocational evaluation, she and Compton believed that further
2  testing would be appropriate to determine Wildey's current aptitudes and interests. (Garrett Decl.
3  ¶27). On May 2, 2006 Garrett sent Wildey a letter indicating that if she did not attend further testing
4  that her case would be closed as they had no further options for proceeding with the case. (Garrett
5  Decl. ¶27).

6  On May 5, 2006 Wildey sent a ten page letter to Compton requesting an administrative review
7  of her case. When supervisor Compton was unable to determine the nature of Wildey's request for
8  administrative review, he invited Wildey to set up a meeting to discuss her case. (Compton Decl.
9  ¶14). On June 1, 2006 Wildey and her husband met with Garrett and Compton. Compton expressed
10 his concern that Wildey was not willing to focus on pursuing a realistic vocational goal and asked her
11 to attend testing with a Vocational Psychologist in order to assess her current abilities, interests and
12 aptitudes. (Compton Decl. ¶15). The request was made pursuant to 9 CCR §7029.9 which states that
13 applicants have the responsibility to participate and cooperate to provide information needed to
14 determine eligibility for services, level of significance of disability, and whether the individual's
15 chosen employment outcome is consistent with the individuals strengths, priorities, concerns, abilities,
16 capabilities and interests. (Compton Decl. ¶15). Wildey became angry because she believed that
17 Compton and Garrett were suggesting that she suffered from mental impairments. (Compton Decl.
18 ¶16; Garrett Decl. ¶28). Wildey was also informed that if she did not agree to complete vocational
19 testing, her file would be closed because Wildey had been unable or unwilling to submit a completed
20 business plan for review after two years. Id.

21 On June 5, 2006 Compton and Garrett jointly decided to close Wildey's file because she
22 refused to participate with the requested psychological testing, did not submit a completed buisness
23 plan, and refused to participate with the agency in developing a viable self employment plan.
24 (Compton Decl. ¶17: Barrett Decl. ¶29).

25 On or about June 28, 2006, Wildey requested a "Fair Hearing" before the Rehabilitation
26 Appeals Board ("Appeals Board"). (TAC Exh. 5 at p.6). Wildey claimed, among other things, that
27 the DOR failed to assist her which resulted in an "undue delay" in services, that her case was closed
28 under duress, that she had fully cooperated with the DOR, and that the DOR specifically looked for

1  errors in her business plan in order to thwart her goal of self-employment. Id.

2  At the hearing before the Appeals Board on January 4, 2007, Wildey, Garrett and Compton
3  provided testimony about the case and events leading to the termination of services. The Appeals
4  Board issued a written decision in favor of the DOR, concluding that the closing of Wildey's case was
5  justified under Title 9, the California Code of Regulations, and other applicable laws. Following the
6  hearing, the DOR offered to reopen Wildey's case if she would agree to cooperate and undergo
7  another vocational assessment, but Wildey refused. (Compton Decl. ¶20, 21).

8  On June 26, 2007, Wildey initiated the instant federal complaint, claiming, among other things,
9  that the DOR acted in concert with Sharp and the other named governmental agencies to discriminate
10 against her based upon her disability. Following the dismissal of Plaintiff's original, first amended,
11 and second amended complaints, on June 16, 2009. Plaintiff filed the operative TAC. On October 20,
12 2009, the court provided notice to the parties that it was converting the pending motions to dismiss
13 to motions for summary judgment. The parties have submitted additional briefing and this order
14 ensues.

15 **DISCUSSION**

16 **Legal Standards**

17 Summary Judgment

18 A motion for summary judgment shall be granted where "there is no genuine issue as to any
19 material fact and . . . the moving party is entitled to judgment as a matter of law." FED. R. CIV. P.
20 56(c); Prison Legal News v. Lehman, 397 F.3d 692, 698 (9th Cir. 2005). The moving party bears the
21 initial burden of informing the court of the basis for its motion and identifying those portions of the
22 file which it believes demonstrates the absence of a genuine issue of material fact. Celotex Corp. v.
23 Catrett, 477 U.S. 317, 323 (1986). There is "no express or implied requirement in Rule 56 that the
24 moving party support its motion with affidavits or other similar materials negating the opponent's
25 claim." Id. (emphasis in original). The opposing party cannot rest on the mere allegations or denials
26 of a pleading, but must "go beyond the pleadings and by [the party's] own affidavits, or by the
27 'depositions, answers to interrogatories, and admissions on file' designate 'specific facts showing that
28 there is a genuine issue for trial.'" Id. at 324, 106 S. Ct. At 2553 (citation omitted). The opposing

1  party also may not rely solely on conclusory allegations unsupported by factual data. Taylor v. List,
2  880 F.2d 1040, 1045 (9th Cir. 1989).

3  The court must examine the evidence in the light most favorable to the non-moving party.
4  United States v. Diebold, Inc., 369 U.S. 654, 655 (1962). Any doubt as to the existence of any issue
5  of material fact requires denial of the motion. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255
6  (1986). On a motion for summary judgment, when "'the moving party bears the burden of proof at
7  trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence
8  were uncontroverted at trial.'" Houghton v. South, 965 F.2d 1532, 1536 (9th Cir. 1992) (emphasis
9  in original) (quoting International Shortstop, Inc. v. Rally's, Inc., 939 F.2d 1257, 1264-65 (5th Cir.
10 1991), cert. denied, 502 U.S. 1059 (1992)).

11 The Rehabilitation Act and ADA

12 To establish a prima facie case of disability based discrimination under the Americans with
13 Disabilities Act ("ADA") and the Rehabilitation Act, a plaintiff must establish all elements of each
14 statute. To prove a public program or service violates Title II of the ADA, a plaintiff must show:

> (1) he/she is a qualified individual with a disability; (2) he/she was either excluded from participation in or denied the benefits of a public entity's services, programs or activities, or was otherwise discriminated against by the public entity; and (3) such exclusion, denial of benefits, or discrimination was by reason of his disability.

42 U.S.C. § 12132; Does 1-5 v. Chandler, 83 F.3d 1150, 1154-1155 (9th Cir. 1996.) Similarly, under Section 504 of the Rehabilitation Act, a plaintiff must show:

> (1) he/she is an individual with a disability; (2) he/she is otherwise qualified to receive the benefit; (3) he/she was denied the benefits of the program solely by reason of his disability; and (4) the program receives federal financial assistance.

29 U.S.C. § 794; Weinrich v. Los Angeles County Metropolitan Transp. Auth., 114 F.3d 976, 978 (9th Cir. 1997). Furthermore, a plaintiff proceeding under Title II of the ADA must, similar to a Section 504 plaintiff, prove that the exclusion from participation in the program was solely by reason of disability. Id.

**Sharp's Motion for Summary Judgment**

Amongst her many conclusory allegations against Sharp, Wildey claims Sharp was in violation of the Rehabilitation Act and Title II of the ADA when it failed to reasonably accommodate her disability with regard to the three day vocational assessment requested by the DOR. Wildey also

accuses Sharp of making misrepresentations in the Sharp report, and of conspiring to discriminate against her by providing the "fraudulent" report to the DOR. Specifically, Sharp argues it acted reasonably to accommodate Wildey by approving a flexible testing schedule. In addition, Sharp disputes any claims of misrepresentations in its report, and in any case, the report was specifically excluded by the Appeal's Board per Wildey's request and was not used in any determinations made in her case.

As a threshold matter, the court notes that Plaintiff fails to make a prima facie showing that the conduct at issue violated either the ADA or the Rehabilitation Act and that she was discriminated against on account of her disability.[1] While there is no dispute that Plaintiff is a qualified individual with a disability eligible for benefits for purposes of the ADA and the Rehabilitation Act, there is no evidence that she was excluded from participating in the program as the program is only available to individuals with disabilities. The primary issue in dispute is whether Sharp, an entity receiving federal financial assistance, was required to provide Wildey with certain accommodations. The regulations implementing Title II of the ADA provide:

> (a) A recipient shall make reasonable accommodation to the known physical or mental limitations of an otherwise qualified handicapped applicant or employee unless the recipient can demonstrate that the accommodation would impose an undue hardship on the operation of its program or activity.
>
> (b) Reasonable accommodation may include: (1) Making facilities used by employees readily accessible to and usable by handicapped persons, and (2) job restructuring, part-time or modified work schedules, acquisition or modification of equipment or devices, the provision of readers or interpreters, and other similar actions.
>
> (c) In determining pursuant to paragraph (a) of this section whether an accommodation would impose an undue hardship on the operation of a recipient's program or activity, factors to be considered include:
>
>> (1) The overall size of the recipient's program or activity with respect to number of employees, number and type of facilities, and size of budget;
>>
>> (2) The type of the recipient's operation, including the composition and structure of the recipient's workforce; and
>>
>> (3) The nature and cost of the accommodation needed.

45 C.F.R. § 84.12; see, e.g. Duvall v. County of Kitsap, 260 F.3d 1124, 1136 (finding hearing

---

[1] There is nothing in the record to show that Plaintiff was excluded from the vocational training program, a program only available to disabled individuals, or was otherwise discriminated against because of her disability.

1  impaired plaintiff presented a triable issue of fact as to violations of the ADA and Rehabilitation Act
2  by defendants for failing to reasonably accommodate his disability in denying him the use of videotext
3  display at his trial).    The Sharp report, (TAC, Exh. 36), indicates that Wildey was granted certain
4  accommodations. On May 12, 2004, she was referred to Sharp to conduct a three day vocational
5  assessment. Wildey expressed concern that the anticipated three consecutive days of testing presented
6  a hardship for her. Sharp accommodated Plaintiff's concern and implemented a flexible schedule.
7  Moreover, during the two days of testing that she did attend, she was given numerous breaks, was
8  permitted to lie down when necessary, was given a high back chair, and was provided ice packs which
9  she utilized throughout the day to help alleviate her pain. (Vocational Evaluation Report, TAC Exh.
10 36 ¶¶ 5-6). Wildey, however, did not appear for the third day of testing. While Wildey represents that
11 she did not attend the third day of testing on the advice of her doctor, she does not explain why she
12 never completed the assessment. Wildey argues that Sharp could have provided a closer location for
13 the testing site, she was sent to the wrong testing program (Oppo. to motion to dismiss, p.3:9-10), one
14 day of vocational testing should have been adequate to assess her abilities, (Rehabilitation Appeals
15 Board Decision, Docket No. 54-3 at p.7), and she could have been provided with additional
16 accommodations such as an ergonomic chair for her spine and platforms for her legs and arms. These
17 arguments are insufficient to create a genuine issue of material fact that Sharp failed to accommodate
18 Plaintiff's disability.

19    Furthermore, Sharp persuasively argues that Plaintiff cannot demonstrate any damages arising
20 from the incomplete report. The decision to close Plaintiff's case before DOR was unrelated to the
21 report prepared by Sharp. Moreover, the Sharp report was not considered by the DOR. DOR even
22 requested that Plaintiff undergo another evaluation but Plaintiff refused to do so. (Rehabilitation
23 Appeals Board Decision, Docket No. 54-3 at p.11). Accordingly, Plaintiff cannot attribute to Sharp
24 any failure to obtain funding for the alpaca business.

25    On the present record, Plaintiff also fails to establish that she is entitled to damages under
26 either the ADA or the Rehabilitation Act.   Wildey is seeking injunctive relief to remove federal
27 funding from Sharp and to order changes in Sharp's policies as well as compensatory and punitive
28 damages of $100 million dollars. Provisions of the ADA and the Rehabilitation Act require remedies

available under those statutes be construed the same as remedies under Title VI of the Civil Rights Act of 1964. Ferguson v. City of Phoenix, 157 F.3d 668, 673 (citing 42 U.S.C. § 12133 (ADA); 29 U.S.C. § 794a(a)(2) (Rehabilitation Act)). The Supreme Court established that "private individuals c[an] not recover compensatory damages under Title VI except for intentional discrimination." Alexander v. Sandoval, 532 U.S. 275, 282 (2001)(quoting Guardians Association v. Civil Service Commission of the City of New York, 463 U.S. 582, 584 (1983)).

Therefore, to recover monetary damages under Title II of the ADA or the Rehabilitation Act, a plaintiff must prove intentional discrimination on the part of the defendant. Ferguson, 157 F.3d at 674. To determine what constitutes intentional discrimination, the 9th Circuit has chosen to utilize the "deliberate indifference" standard. Duvall 260 F.3d at 1138-39 (noting the deliberate indifference standard rather then the discriminatory animus standard is better suited to the remedial goals of Title II of the ADA). "Deliberate indifference requires both knowledge that a harm to a federally protected right is substantially likely, and a failure to act upon that likelihood." Id. at 1139 (citing City of Canton v. Harris, 489 U.S. 378, 389). This includes notice and some opportunity to conform. Id. "When the plaintiff has alerted the public entity to his need for accommodation (or when the need for accommodation is obvious, or required by statute or regulation), the public entity is on notice that an accommodation is required, and the plaintiff has satisfied the first element of the deliberate indifference test." Id. The second element of the test, failure to act, can only be satisfied by conduct that is more than negligent, meaning conduct involving some form of deliberateness. Id.

Here, under the present record, there is no indication that Sharp was deliberately indifferent to Plaintiff's needs. The record shows that Sharp adopted a flexible testing schedule, provided Plaintiff with numerous breaks, permitted her to lie down when necessary, provided a high back chair, and provided with ice backs which she utilized throughout the day to help alleviate her pain. (Vocational Evaluation Report, TAC Exh. 36 ¶¶ 5-6). The factual record demonstrates that Sharp was not deliberately indifferent to Plaintiff's needs.

In sum, the court enters summary judgment in favor of Sharp and against Plaintiff on all claims

alleged in the TAC.[2]

**The State's Motion for Summary Judgment**

The TAC alleges several claims against the State of California and several of its agencies: one claim is for illegal disability discrimination under Title II of the ADA and the Rehabilitation Act, another for violations under 42 U.S.C. section 1983, and the other for constructive fraud. Although somewhat difficult to decipher, it appears the disability discrimination claim is based on the DOR's decision to close Plaintiff's case and the Appeals Board's decision to uphold the determination of the DOR. The fraud claim appears to be based on actions of the DOR and the DIR and its employees who worked with Wildey on her application for rehabilitation services and on an earlier worker's compensation case. It also appears Wildey partially bases these claims on some concerted effort between DOR and Sharp employees to deny her benefits.

<u>The ADA and Rehabilitation Act Claims</u>

DOR and DIR have come forward with evidence to show that the agencies and the employees assigned to assist Wildey, did not discriminate against her in order to deny her benefits. The record shows that DOR worked with Wildey for over two years in an attempt to help her attain any benefits that may have been available to her. It was only after several failed attempts to get Wildey to cooperate by engaging in further testing and completing necessary paperwork, that the decision to close her case was finally made. It is also important to note that the DOR recognized the possibility of Wildey's case being re-opened upon her further cooperation. This is indicative of the DOR's continued desire to work with Wildey to attain suitable and appropriate goals for someone in her unique position. Therefore, because Wildey has failed to raise any genuine issue of material facts supporting a claim of discrimination on the part of DOR, DIR, or its employees, and, for the reasons set forth below, the court grants summary judgment in favor of these Defendants and against Plaintiff.

Although the TAC is 49 pages long and her opposition 167 pages long, she fails to create a genuine issue of material fact or law in support of a claim of discrimination or fraud by any of the

---

[2] For the same reasons set forth above, the court grants judgment in favor of Sharp on the fraud/conspiracy claim. Wildey has failed to identify any specific conduct on the part of Sharp or its employees that would subject them to liability under either a theory of fraud or conspiracy to discriminate.

- 12 - 07cv1154

named State defendants. Pursuant to the California Code of Regulations, DOR was required to evaluate Wildey's skills and abilities for the purpose of determining her eligibility for services and vocational rehabilitation needs. 9 CCR §7128. The record demonstrates that the termination of services to Wildey was not based on her disability, but on her failure to participate with the required vocational testing and her failure to develop a complete business plan, despite DOR's efforts to assist Plaintiff in developing the business plan.

Plaintiff's opposition fails to rebut the material evidence submitted by DOR. For example, Plaintiff argues that

> Plaintiff had shown that she met all the requirements of both, the ADA and the Rehabilitation Act. Defendants, DOR and DIR knew or should have known that the indifference of their employees to protect plaintiffs rights as a qualified individual with a disability were and are intentionally done with acts of discriminatory practices. The DOR and DIR employees . . . knew or should have known that plaintiff met the requirements of state and federal laws, but chose to intentionally perpetuate the discriminatory acts.

(Oppo. ¶62). The conclusory allegations asserted by Plaintiff are insufficient to raise a genuine issue of material fact. Wildey merely makes conclusory allegations to the effect that because her case was closed and she was denied benefits, that she was discriminated against and that the named defendants acted fraudulently. She simply fails to identify facts linking any discrimination based solely on her disability or fraudulent conduct on the part of the DOR or its employees to the denial of her claims.[3] (Oppo. ¶¶16-46). Wildey largely claims that each individual conspired to perpetuate this supposed discrimination and did so in retaliation for her pursuing her claims. But, again these are merely conclusory allegations without supporting facts to suggest some concerted plan to discriminate and/or perpetuate a fraud against Wildey, the very type of disabled individual the DOR is charged with assisting. In fact, the evidentiary record clearly demonstrates that Wildey's claims and grievances were given all due consideration and there is nothing in the facts provided by any party supporting an alternate conclusion. It appears that Wildey was unhappy with the way her case was being handled by the DOR and is in essence challenging the adequacy of the DOR's services and not illegal disability discrimination.

---

[3] The court further notes that the evidentiary record even fails to establish that the alleged discrimination was a motivating factor in the denial of program assistance.

Further, the issue of whether DOR acted appropriately in deciding to terminate Wildey's benefits is an issue that has already been litigated and upheld by the Rehabilitaition Appeals Board. When a state administrative agency acting in a judicial capacity resolves disputed issues of fact properly before it in a proceeding which afforded the parties an adequate opportunity to litigate, federal courts give preclusive effect to the administrative determination. See Doe v. Pfromer, 148 F.3d 73, 80 (9th Cir. 1998). While Plaintiff objects to the court taking judicial notice of the DOR decision, the court rejects her argument because, pursuant to FRE 201, the court may appropriately take judicial notice of the Rehabilitation Appeal Board decision.

<u>The Fraud/Constructive Fraud Claims</u>

Though somewhat difficult to decipher, Wildey's constructive fraud claim is based primarily on her belief that misrepresentations were made to her by individual employees of the DOR and DIR during the benefit application process and her Worker's Compensation Appeal. Specifically, Wildey claims that DOR employees made misrepresentations to her regarding the amount of assistance she would receive with her business plan and the availability of funding for her business and college education. Wildey also includes vague allegation about the conduct of the DIR judge's decision in her case.

In order to establish intentional fraud a plaintiff must prove each of the following elements: (1) false representation or concealment of fact; (2) knowledge of falsity; (3) intent to induce reliance; (4) justifiable reliance; and (5) damages. Aguilera v. Pirelli Armstrong Tire Corp., 223 F.3d 1010, 1016 (9th Cir. 2000) (applying California law, however, basic elements of fraud are the same across jurisdictions). To establish constructive fraud, all elements of actual fraud, except the element of intent to deceive, must be established. See AMJUR FRAUD § 9. Further, allegations of fraud must comply with Rule 9(b)'s particularity requirement which provides that, "in all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." FRCP Rule 9(b); Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit, 507 U.S. 163, 168 (1993).

Here, Wildey has failed to allege or establish a factual basis showing that she is entitled to a claim of legal or constructive fraud. First, it is not clear what exact misrepresentations were made to

Wildey and/or concealed from her during her contact with the DOR. The interaction between Wildey and the DOR and any conversations between the parties regarding the type and amount of assistance Wildey would receive is better characterized as a misunderstanding or mis-communication rather than as fraudulent inducement on the part of the DOR as Wildey fails to establish any reason why the DOR would want to induce her reliance in any way to her detriment and to its benefit. Indeed, as already mentioned above, the very purpose of the DOR is to assist individuals like Wildey in obtaining benefits; not to make false representations in order to induce reliance and cause harm to its applicants.[4]

<u>The 42 U.S.C. § 1983 Claim</u>

It is well-established that neither the state nor its officials acting in their official capacities are "persons" subject to liability under 42 U.S.C. 1983. <u>Will v. Michigan Department of State Police</u>, 491 U.S. 58, 71 (1989). "Section 1983 provides a federal forum to remedy many deprivations of civil liberties, but it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties." <u>Id.</u> at 65. Indeed, "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. <u>Brandon v. Holt</u>, 469 U.S. 464, 471 (1985).

Here, the §1983 claim suffers from numerous defects. First and foremost, to state a §1983 claim the threshold inquiry is whether the claimant has identified a right cognizable under the Civil Rights Act. <u>Baker v. McCollan</u>, 443 U.S. 137, 140 (1979). Plaintiff simply fails to identify that she was deprived of any cognizable constitutional or other substantive federal right.[5] Second, Wildey has brought her § 1983 action against the DOR and the DIR as state agencies. Wildey also names individual state employees acting in their official capacity.[6] Because the DOR, the DIR, and

---

[4] The court also notes that Plaintiff failed to comply with the California Tort Claims Act by administratively pursuing her state law claims. This is another basis for dismissal of her state law claims.

[5] Assuming a violation of the Rehabilitation Act or the ADA is intended by Plaintiff to serve as the substantive predicate for her §1983 claim, then, as already demonstrated above, these claims cannot survive summary judgment on this evidentiary record.

[6] It should be noted that although Wildey appears to intend to name these individual State employees as defendants, she has failed to name them in the caption as required by Federal Rules of Civil Procedure Rule 10(a). Wildey has been given two opportunities to cure this defect yet has failed to do so.

- 15 -    07cv1154

their officials are not persons within the meaning of section 1983, Wildey's federal civil rights action fails as a matter of law because these entities are not persons for purposes of 42 U.S.C. §1983. <u>Will</u>, 491 U.S. at 65.

<u>Immunity</u>

In addition to her claims of discrimination on the part of DOR, DIR and their employees, the focus of Wildey's discrimination claim appears to be the decision of the Appeals Board to uphold the closure of her case and deny her benefits. (TAC ¶¶30, 69). Wildey is barred from pursuing any claims for monetary relief against the DIR on this basis because the members of the Board are entitled to judicial immunity.

Judges and those performing judge-like functions are absolutely immune from damage liability for acts performed in their official duties. <u>Stump v. Sparkman</u>, 435 U.S. 349, 355-56 (1978). Judicial immunity also extends to administrative law bodies and officers acting in a judicial or quasi-judicial capacity, functionally equivalent to that of a judge. <u>Butz v. Economou</u>, 438 U.S. 478, 512-513 (1978); <u>Romano v. Bible</u>, 169 F.3d 1182, 1186 (9th Cir. 1999).

Here, the Appeals Board and its members were acting in a judicial capacity when conducting the hearing in Wildey's case. The Appeals Board was created pursuant to the Rehabilitation Act, 29 U.S.C. § 722 and conducts its hearings pursuant to Chapter 12 of Title 9 of the California Code of Regulations. These regulations set forth structured formal procedures offering an applicant a fair opportunity to be heard, describe the responsibilities of the applicant and the hearing officers, and detail the remedial procedures available to an applicant dissatisfied with the results of their hearing. <u>See</u> Title 9, California Code of Regulations §§ 7354-7358. Therefore, the Appeals Board and its officers are entitled to absolute immunity from Wildey's ADA and Rehabilitation Act claims.

Additionally, though difficult to decipher, it appears Wildey's claims directed toward the DIR (which she refers to as the Worker's Compensation Appeals Board in her TAC) are based exclusively on the actions of the Workers Compensation Appeals Judge Susan England's refusal to overturn a decision made by a doctor who conducted an earlier medical examination in Wildey's worker's compensation case. (TAC p. 30, ¶ 69). Apart from the ambiguity of this claim, any claim that Wildey intends to raise against the DIR are barred by Judge England's judicial immunity. The scope of

1  judicial immunity is broad and a judge will not be deprived of immunity even if the action taken was
2  in error, was done maliciously, or was in access of his authority. <u>Stump</u>, 435 U.S. at 355-56.
3       In sum, the court grants Sharp's converted summary judgment motion in its entirety and grants
4  DOR and DIR's motion for summary judgment in its entirety. Finally, the court notes that the only
5  remaining defendant who has been served with the summons and complaint and appeared in this
6  action is defendant Access to Independence. (Docket No. 36). The court requests Magistrate Judge
7  Adler to conduct a Case Management Conference, if appropriate, to move this case forward.
8       **IT IS SO ORDERED.**
9  DATED:  March 18, 2010

                                                Hon. Jeffrey T. Miller
                                                United States District Judge

12 cc:      All parties
            Magistrate Judge Adler